UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| William Stewart, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 6175 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Bell Atlantic Long Term Disability | ) | |
| Plan for Management Employees, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Stewart brings this action against defendant Bell Atlantic Long Term Disability Plan for Management Employees to recover benefits under the terms of a long term disability plan offered by his former employer. In his complaint, Stewart sets forth a single claim under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Presently before the Court are the parties' cross-motions for summary judgment. R. 17; R. 23. For the reasons explained below, defendant's motion for summary judgment is granted, and Stewart's motion for summary judgment is denied.

**Background[1]**

The material facts in this case are undisputed. Stewart was a participant in the Bell Atlantic Long Term Disability Plan for Management Employees (the "LTD

---

[1] The Court cites Defendant's Statement of Material Facts (R. 19) as "DSMF ¶ __," Plaintiff's Response (R. 22) as "PR ¶ __," Plaintiff's Statement of Additional Material Facts (R. 22) as "PSMF ¶ __," and Defendant's Response (R. 29) as "DR ¶ __." The Court cites the exhibits attached to Defendant's Statement of Material Facts (R. 19) as "Def. Exh. __."

Plan") by virtue of his employment with Verizon Communications Inc. ("Verizon").[2] DSMF ¶ 2; PR ¶ 2. On February 23, 2001, however, Stewart's employment was terminated due to a "reduction in force." DSMF ¶ 8; PR ¶ 8. At the time of his discharge, Stewart signed a separation agreement and release in exchange for a "cash separation payment" of $63,840. Def. Exh. 14 at 5; DSMF ¶ 9; PR ¶ 9.  By signing this agreement, Stewart waived numerous potential claims against Verizon; however, he retained the right to seek benefits under the LTD Plan. Def. Exh. 11 at 19; PR ¶ 9.

Stewart spent the next several years attempting to collect Social Security Disability Insurance ("SSDI") benefits. DSMF ¶ 11; PR ¶ 11. On November 15, 2002, an Administrative Law Judge ("ALJ") found that Stewart was not disabled and declined to award him SSDI benefits. Def. Exh. 18 at 1-2. The case was later reopened, however, and on June 28, 2005, a different ALJ awarded Stewart SSDI benefits after finding that he had been under a disability since February 23, 2001, the date that he was discharged from Verizon.[3] *Id.* at 2-3.

**Stewart's Claim for LTD Plan Benefits**

On March 19, 2006, more than five years after leaving Verizon, Stewart submitted a claim for benefits under the LTD Plan. DSMF ¶ 11; PR ¶ 11. Stewart

---

[2] Verizon is the successor-in-interest to Bell Atlantic Corporation as the result of a corporate merger. DSMF ¶ 2; PR ¶ 2. Verizon continued to sponsor the LTD Plan after the merger occurred. Def. Exh. 1 at 6.

[3] According to his treating physician, Stewart suffers from treatment-resistant bipolar II disorder. Def. Exh. 18 at 6. This diagnosis can be traced back as early as 1993, when Stewart suffered "significant depressive episodes . . . and was hospitalized for a serious suicide attempt." *Id.* at 5.

asserted, based on the decision of the ALJ, that he was "in essence disabled the date [he] separated from Verizon." Def. Exh. 18 at 1. As a result, Stewart claimed that he was entitled to collect LTD Plan benefits since February 23, 2001. *Id.*

Section 4 ("Long Term Disability Benefits") of the LTD Plan sets forth the requirements that a claimant must meet in order to receive long term disability benefits. Def. Exh. 3 at 2. Specifically, Section 4.1 ("Commencement of Benefits") states that:

> Subject to the terms and conditions of this Section 4, and except as otherwise provided in the [LTD] Plan, an Employee enrolled in the [LTD] Plan who is disabled, as determined by the Benefits Administrator, upon the expiration of the applicable Waiting Period and his/her termination of employment with Company and its Affiliates, shall receive long term disability benefits under the [LTD] Plan, provided the Employee makes timely and proper application for such benefits in accordance with Section 4.6 ("Application for Benefits") and such application is approved.

Def. Exh. 1 at 12. Section 2 ("Definitions") defines the term "Waiting Period" as:

> A continuous period of twenty-six (26) weeks following the date an Employee is last Actively at Work (not including one week of incidental absence), during which the Employee is eligible to receive sickness disability benefits under the SADBP (or any other short term disability plan in which the Employee participates) and for which no benefits are payable under the [LTD] Plan.

*Id.* at 10. The term "SADBP" refers to the Sickness and Accident Disability Plan for Bell Atlantic Employees (the "STD Plan"), which serves as a short term disability plan for qualifying employees. *Id.* at 9.

Stewart's claim was referred to the Verizon Claims Review Unit ("VCRU"), which is the designated claims administrator for the LTD Plan. DSMF ¶ 12; PR ¶ 12. On October 10, 2006, the VCRU informed Stewart that his claim was denied due to his failure to exhaust the applicable Waiting Period. Def. Exh. 3 at 2. The VCRU recognized that Stewart had received short term disability benefits on several occasions during his employment with Verizon. *Id.* at 3. Most recently, Stewart had collected benefits under the STD Plan between September 25, 2000 and November 15, 2000. *Id.* at 2. However, the VCRU explained that none of Stewart's periods of short term disability amounted to twenty-six continuous weeks, and Stewart returned to work after each period of short term disability. *Id.* at 1-2.

On March 29, 2007, Stewart appealed the denial of benefits to the Verizon Claims Review Committee ("VCRC"), which is the designated appeals administrator for the LTD Plan. DSMF ¶ 15; PR ¶ 15. Stewart stated that he believed he was entitled to benefits because he was covered by the LTD Plan on his last day of employment. Def. Exh. 4 at 2. After admitting that he did not receive short term disability benefits for a continuous period of twenty-six weeks following his last day of employment, as required by the Waiting Period, Stewart asserted that his "last day of work [was] February 23, 2001, so [his] eligible benefit date [under the LTD Plan] would be sometime in August of 2001." *Id.*

The VCRC considered Stewart's appeal at its May 10, 2007 meeting, and the decision of the VCRU was upheld. DSMF ¶ 17; PR ¶ 17. The VCRC explained, in a similar fashion, that Stewart had failed to exhaust the applicable Waiting Period,

which serves as a prerequisite to receiving benefits under the LTD Plan. Def. Exh. 5 at 2. Stewart was subsequently informed of his right to bring a civil action under ERISA. *Id.* at 4.

**Federal Court Proceedings**

On October 9, 2009, Stewart filed a complaint in the Circuit Court of Cook County to recover benefits under the LTD Plan. DSMF ¶ 19; PR ¶ 19. Defendant later removed Stewart's lawsuit to this Court. DSMF ¶ 19; PR ¶ 19. On November 9, 2010, the Court (Guzman, J.) remanded the matter back to the plan administrators for a specific determination "as to whether [Stewart] was eligible for short term disability benefits for a continuous period of twenty-six weeks following the last day he was actively at work." *Stewart v. Bell Atl. Long Term Disability Plan for Mgmt. Emps.*, No. 09 C 7012, 2010 WL 4688981, at *3 (N.D. Ill. Nov. 9, 2010). The Court noted that the prior decisions of the VCRU and the VCRC focused on when Stewart actually *received* short term disability benefits, but that the Waiting Period of the LTD Plan only required Stewart to be *eligible* to receive them. *Id.* at *2. Remand was appropriate, the Court explained, because the LTD Plan did not set forth the eligibility requirements for short term disability, and the STD Plan was not part of the record. *Id.* at *2-*3.

**Consideration of the Court's Remand Order**

On January 24, 2011, after considering the Court's remand order, the VCRU determined that "Stewart was not eligible for short term disability benefits for a continuous period of twenty-six weeks following the last day he was actively at

work," and therefore did not qualify for LTD Plan benefits. Def. Exh. 7 at 4. In support of its decision, the VCRU cited Section 3.2.2 ("Further Conditions of Eligibility for Benefits") of the STD Plan:

> In the absence of clear, objective evidence that a failure to comply, or a delay in complying . . . was unavoidable by an Employee, a certification of Disability will be denied, and Benefits will not be payable under this [STD] Plan . . . if the Employee fails to present timely, persuasive evidence of Disability or is otherwise found not to be disabled.

Def. Exh. 2 at 9. The VCRU explained that Stewart was not eligible for short term disability benefits because he "never applied or made a claim for benefits under the STD Plan . . . and therefore did not satisfy . . . Section 3.2.2." Def. Exh. 7 at 4. Further, even if Stewart had sought STD Plan benefits in his application for LTD Plan benefits, his request would not have been timely, as it was filed more than five years after the onset of his disability. *Id.*

In further support of its decision, the VCRU pointed to Section 3.2.4 ("Cessation of Benefits") of the STD Plan, which states that "[c]overage under the Plan shall end when the Employee is no longer an active Employee, as of the date of resignation. Def. Exh. 2 at 10. According to the VCRU, "Stewart was not an active employee on February 24, 2001, and therefore under the subsection 3.2.4 of the STD Plan, he would not have been covered under that Plan." Def. Exh. 7 at 4. Additionally, because Stewart was not on the payroll after his discharge, the VCRU stated that he could not comply with a separate provision of the STD Plan which

provides that "an employee's remuneration for the first seven days of absence shall not be provided under the Plan." *Id.*

Finally, the VCRU turned back to the language of the LTD Plan to deny Stewart's request on remand for a third reason. The VCRU cited Section 4.7 ("Application for Benefits") of the LTD Plan, which provides:

> To obtain long term disability benefits under the [LTD] Plan, an Employee must submit . . . written proof of the occurrence, character and extent of the disability and supporting medical evidence at least ninety (90) days following the expiration of the Waiting Period. In the event any Employee fails to submit due and acceptable proof when so required hereunder, the Claims Administrator shall deny payments of benefits to the Employee. Notwithstanding the foregoing, if it is shown to the Claims Administrator's satisfaction that furnishing the proof required by this Section 4.7 was not reasonably possible within the time limits prescribed by the Claims Administrator and if due and acceptable proof is furnished as soon as reasonably possible, but in no event later than six (6) months from the time such proof is otherwise required, any payment of long term disability benefits that has been denied shall be made as soon as practicable after such proof has been supplied.

Def. Exh. 1 at 15. The VCRU held that Stewart's claim for LTD Plan benefits must be denied because his application for benefits was not timely under the terms and conditions of the LTD Plan. According to the VCRU, "Stewart did not submit his application and supporting evidence for LTD benefits until March of 2006; therefore [his] application is not timely under Section 4.1 and 4.7 of the LTD Plan. *Id.* at 5.

On July 22, 2011, Stewart appealed the decision of the VCRU. DSMF ¶ 21; PR ¶ 21. Stewart contended that "the fact that Verizon laid [him off] before he could take advantage of STD for twenty-six weeks cannot deprive [him] of the LTD

Benefits to which he is entitled." Def. Exh. 8 at 2. According to Stewart, Section 3.2.4 ("Cessation of Eligibility") of the LTD Plan contained an exception that made him eligible for benefits:

> An employee shall cease to be eligible for coverage under the [LTD] Plan as of the date the Employee ceases to be an Employee on account of resignation, discharge, layoff or retirement, except that an Employee who is receiving continuation pay under the severance plan of a Participating Company, and is disabled of the date s/he terminates employment, may be eligible for benefits hereunder if such Disability continues throughout the Waiting Period.

Def. Exh. 1 at 11. Stewart claimed that the cash separation payment of $63,840 that he received when he was discharged from Verizon constituted continuation pay, and therefore he remained eligible for benefits under the LTD Plan. Def. Exh. 8 at 2.

Stewart also argued that his failure to apply or make a claim for benefits within a certain period of time was irrelevant. *Id.* Stewart interpreted the Court's remand order as requiring the VCRU to determine whether he was eligible for short term disability benefits *had* he applied for them; therefore, Stewart argued, the VCRU should have assumed he had timely filed his request. *Id.* In any event, Stewart contended that the VCRU was estopped from making the determination that he had not timely filed his application because it had not raised that point prior to the Court's remand. *Id.*

Stewart's appeal was considered by the VCRC at its August 25, 2001 meeting, and the VCRC again upheld the decision of the VCRU. DSMF ¶ 22; PR ¶ 22. In a letter dated October 17, 2011, the VCRC explained that "Stewart failed to

present timely, persuasive evidence of [his] disability as is required by subsection 3.2.2 of the STD Plan[,] and therefore [he] was not eligible for STD benefits for a continuous period of twenty-six weeks following the last day he was actively at work. Def. Exh. 9 at 5. Additionally, "Stewart was not an active employee on February 24, 2001[,] and therefore pursuant to section 3.2.4 of the STD Plan[,] he was no longer covered under that plan[,] nor could he meet the payroll practice prerequisite of section 3.2.2 of the STD Plan." *Id.* at 5-6. Finally, the VCRC stated that "Stewart's claim for LTD benefits must be denied because his application for LTD benefits was not timely under the LTD Plan." *Id.* at 6. Stewart subsequently filed this lawsuit, raising a single claim under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). R. 1.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not

return a verdict for the nonmmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the parties have filed cross-motions for summary judgment, the Court applies this standard to each motion separately in order to determine whether there is a genuine dispute of material fact and whether judgment should be entered as a matter of law. *Marcatante v. City of Chicago*, 657 F.3d 433, 438-39 (7th Cir. 2011). In ruling on each cross-motion for summary judgment, the Court draws inferences in favor of the party against whom the motion under consideration is made. *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011).

## Analysis

Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotation marks omitted). One of the principal goals of the statute is "to enable employers to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Melton v. Melton*, 324 F.3d 941, 944 (7th Cir. 2003). Therefore, while employers are not required to create employee benefit plans, ERISA mandates that any such plans "be administered, and benefits be paid, in accordance with plan documents." *Egelhoff v. Egelhoff*, 532 U.S. 141, 150 (2001).

ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement." *Aetna Health Inc.*, 542 U.S. at 208. Under

§ 502(a)(1)(B), "a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This civil enforcement mechanism seeks to balance "the public interest in encouraging the formation of employee benefit plans" against "the need for prompt and fair claims settlement procedures." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

Pursuant to § 501(a)(1)(B), Stewart challenges defendant's decision to deny his claim for benefits under the LTD Plan. R. 1 ¶ 11. Stewart contends that defendant incorrectly determined that he "was not entitled to short term disability benefits for a continuous period of twenty-six weeks following the last day he was actively at work." *Id.* Furthermore, even if the STD Plan limited his claim for LTD Plan benefits, Stewart argues that defendant failed to recognize an exception within the LTD Plan "where an employee, who is disabled as of the date of termination [and] is receiving 'continuation pay' under a severance plan" remains eligible for LTD Plan benefits. *Id.*

## I. The Court Reviews the Determinations of the VCRU and VCRC under an "Arbitrary and Capricious" Standard

ERISA itself does not set out the appropriate standard of review for actions under § 502(a)(1)(B) challenging benefit eligibility determinations. *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 385 (2002). To fill this gap, the Supreme Court had held that a denial of benefits is reviewed *de novo*, "unless the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility

for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the language of the plan gives the administrator discretionary authority, the standard of review is deferential, and the administrator's interpretation of the plan "will not be disturbed if it is reasonable." *Id.* at 111. The Seventh Circuit has interpreted this standard as permitting courts to "set aside an administrator's decision only if it is arbitrary and capricious." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 744-45 (7th Cir. 2009).

The arbitrary and capricious standard of review "embod[ies] the highest level of deference." *Exbom v. Central States, Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir. 1990). When applying this standard, courts must uphold a benefit determination if:

> (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.

*Houston v. Provident Life & Accident Ins. Co.*, 390 F.3d 990, 995 (7th Cir. 2004). In other words, if the administrator "makes an informed judgment and articulates an explanation that is satisfactory in light of the relevant facts . . . then the [administrator's] decision is final." *Exbom*, 900 F.2d at 1143.

The VCRU and the VCRC are vested with significant discretion in making benefit determinations. The language of the LTD Plan gives the VCRU and the VCRC "full discretionary authority to administer the Plan in all of its details," which includes "determin[ing] whether a claimant is eligible for benefits." Def. Exh.

1 at 19, 25. Specifically, the VCRU "has sole authority to decide claims under the Plan," and the VCRC "has sole authority to exercise discretion in the review and resolution of any initial appeal of a denied claim under the Plan." *Id.* at 25. In performing these duties, the VCRU and the VCRC are permitted to "interpret [documents] based on the Plan's provisions and applicable law, and make factual determinations about claims arising under the Plan." *Id.* Accordingly, the Court considers the determinations of the VCRU and the VCRC under an "arbitrary and capricious" standard of review.[4]

Stewart argues that the Court should apply an "abuse of discretion" standard due to defendant's conflict of interest as both the plan administrator and the benefit payor. R. 24 at 2. The Court disagrees. As an initial matter, the distinction between the "arbitrary and capricious" and the "abuse of discretion" standards is not significant here. The Seventh Circuit has held that the "arbitrary and capricious" standard, "at least for ERISA purposes, is synonymous with [the] 'abuse of discretion' [standard]." *Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 449 (7th Cir. 2009). To the extent that there are any differences in the standards under ERISA, however, the Court would reach the same result under both standards.

Turning to the substance of Stewart's argument, the Supreme Court has indeed recognized that a plan administrator that "both evaluates claims for benefits

---

[4] This is the same determination that the Court (Guzman, J.) made in its remand order after the VCRU and the VCRC originally denied Stewart's claim for benefits. *Stewart*, 2010 WL 4688981, at *1. Further, Stewart admits in his complaint that the appropriate standard of review is "arbitrary and capricious." R. 1 at ¶ 11.

and pays benefits claims" operates under a conflict of interest. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). In such circumstances, "every dollar provided in benefits is a dollar spent by . . . the employer[,] and every dollar saved . . . is a dollar in [the employer's] pocket." *Id.* (citing *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 144 (3d Cir. 1987)). The existence of a conflict of interest, however, does not "impl[y] a change in the standard of review." *Id.* at 115. Instead, the conflict should "be weighed as a factor" in determining which standard of review applies, with the significance of the factor depending upon the circumstances of the particular case. *Firestone Tire & Rubber Co.*, 489 U.S. at 115. The conflict of interest "should prove less important . . . where the administrator has taken steps to reduce potential bias and to promote accuracy." *Metro. Life Ins. Co.*, 554 U.S. at 126.

The Seventh Circuit requires "specific evidence of actual bias" in order for a conflict of interest to alter the "arbitrary and capricious" standard of review. *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 575 (7th Cir. 2006). "The mere existence of a structural conflict, which is a given in almost all ERISA cases," is not sufficient. *Krupp v. Liberty Life Assurance Co. of Boston*, 936 F. Supp. 2d 908, 919 (N.D. Ill. 2013) (citing *Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009)). In cases involving a mere structural conflict of interest, "[t]he correct standard of review to be applied . . . remains the 'arbitrary and capricious' standard," with the conflict simply taken into account in applying that standard. *Fischer v. Liberty Life Assurance Co. of Boston*, 576 F.3d 369, 375 (7th Cir. 2009).

In the present case, the only conflict of interest arises from defendant's dual role as the plan administrator and the benefit payor. This conflict is structural in nature, and therefore the Court will not depart from the ordinary "arbitrary and capricious" standard of review. Stewart points to no "specific evidence of actual bias" on the part of the VCRU or the VCRC which would compel the Court to review their decisions under a different standard. Further, the language of the LTD Plan outlines the requirements for eligibility with little room for interpretation. Consistent with *Fischer*, then, the Court will take the conflict of interest into account in applying the "arbitrary and capricious" standard of review.

## II. Defendant's Decision Regarding Stewart's Eligibility for Short Term Disability Benefits Was Not Arbitrary and Capricious

Ordinary contract principles govern the interpretation of an employee benefit plan. *See Herzberger v. Standard Ins. Co.*, 205 F.2d 327, 330 (7th Cir. 2000). In order to receive benefits under the LTD Plan, a claimant must first show that he was "eligible to receive sickness disability benefits under the [STD Plan]" for "a continuous period of twenty-six (26) weeks following the date [he was] last Actively at Work." Def. Exh. 1 at 10. The VCRU determined that Stewart "was not eligible for short term disability benefits for a continuous period of twenty-six weeks following the last day he was actively at work" because he never submitted a claim for STD Plan benefits, and in any event, he did not timely present evidence of his disability. Def. Exh. 7 at 4. As a result, the VCRU found that Stewart was not entitled to LTD Plan benefits, Def. Exh. 7 at 4, and the VCRC affirmed its decision. Def. Exh. 9 at 6.

The VCRU interpreted the STD Plan correctly. Section 3.2.2 of the STD Plan describes "Further Conditions of Eligibility for Benefits" to include "present[ing] timely, persuasive evidence of Disability." Def. Exh. 2 at 9. Thus, if Stewart failed to present timely evidence of his disability, he would not be eligible for short term disability benefits, which would also make him ineligible for long term disability benefits.

The VCRU's determination that Stewart did not present timely evidence of his disability finds adequate support in the record. Stewart did not inform Verizon of his disability until March 19, 2006, more than five years after he was discharged. The record indicates, however, that Stewart was aware of his disability much earlier. In a letter dated May 5, 2005, Dr. Susan L. Price states that she had been treating Stewart for bipolar disorder since November 1, 2002. Def. Exh. 18 at 5. After reviewing his psychiatric records, Price learned that Stewart "has been treated unsuccessfully with multiple antidepressant medications" since 1993, and that he "has had only brief periods of return to pre-1993 level[s] of functioning." *Id.* Further, throughout the course of Stewart's treatment, Price noted the following:

> He has had significant dysphoric mood with high levels of helplessness, hopelessness, and worthlessness. He has low levels of motivation, lacks interest and pleasure, and complains of low energy. His symptoms have impaired his ability to look for work but he has looked and each rejection has deepened his depression and increased his suicidal thoughts as he sees no hope for the future. His thought distortions limit his problem solving ability.

*Id.* Finally, the record shows that Stewart first applied for SSDI benefits in November 2002, which was presumably prompted by the diagnosis that Price made

earlier that month. *Id.* at 1. Thus, Stewart clearly had knowledge of his disability at or near the time he was discharged from Verizon.

In his initial claim for benefits, Stewart stated that "[t]he delay in filing is almost exclusively related to the time it has taken to accomplish the SSDI from first filing there in November of 2002." R. 18 at 1. However, this does not provide an adequate explanation for the delay, as nothing in the language of the STD Plan requires an ALJ to determine that the claimant is disabled and entitled to SSDI benefits. Instead, the term "Disability" is defined in Section 2 ("Definitions") as "a condition that is a direct result of a significant adverse change in an Employee's physical or mental condition and occurs to an Employee on a date when he is an Employee of a Participating Company, and that causes the Employee to become unable to perform the material duties of his occupation." Def. Exh. 2 at 7. Stewart could have presented Verizon with evidence of his disability while receiving treatment from Price, and perhaps even earlier, while he was receiving antidepressant medication. Stewart was not required to wait for the decision of the ALJ. Indeed, throughout the pendency of his SSDI claim, he always maintained that he was disabled.

Stewart provides no other explanation for his five-year delay, making the facts of this case analogous to those of *Zamecnik v. Abbco, Inc.*, 237 Fed. Appx. 102 (7th Cir. 2007). In *Zamecnik*, an employer's long term disability plan required the claimant to provide written notice of his claim "within 30 days after the loss begins or as soon as reasonably possible." *Id.* at 103. The claimant, however, did not file his

claim until 16 months after his disability purportedly began. *Id.* Aside from suffering "excruciating pain," which required a few trips to the hospital, the claimant never explained the delay in filing his claim. *Id.* at 104. The Seventh Circuit held that "it was up to [the claimant] to show that he timely filed his claim, and because he cannot point to anything in the record to justify his 16-month delay, the district court did not err in entering summary judgment against him." *Id.*

In this case, Stewart waited more than five years to present Verizon with evidence of his disability and provided no acceptable explanation for his delay. As a result, the VCRU and the VCRC determined that Stewart's claim was not timely, which rendered him ineligible for short term disability benefits.[5] Because he was ineligible for short term disability benefits, he was also ineligible for long term disability benefits. The decisions of the VCRU and the VCRC find adequate support in the record, and they are based on a reasonable interpretation of plan documents. Additionally, their decisions were not tainted by any conflict of interest, as the language of the STD Plan is unambiguous. *See Rice v. ADP TotalSource, Inc.*, 936 F. Supp. 2d 951, 962 (N.D. Ill. 2013) ("The presence of a conflict will act as a tiebreaker when other factors are closely balanced, but does not play an important role in non-borderline cases."). For these reasons, the Court finds that the decisions of the VCRU and the VCRC were not arbitrary and capricious, and therefore defendant is entitled to summary judgment.

---

[5] Stewart points to no short term disability plan, other than the STD Plan, in which he was a participant.

### III. Stewart Was Not Receiving Continuation Pay under the Terms of a Severance Plan

The LTD Plan provides that an employee remains "eligible for coverage under the [LTD] Plan as of the date [he is discharged]" so long as the employee is "receiving continuation pay under the terms of a severance plan." Def. Exh. 1 at 11. According to Stewart, the $63,840 separation payment he received when he was terminated by Verizon constituted "continuation pay under a severance plan," and therefore he remains eligible to receive LTD Plan benefits. R. 24 at 5.

Stewart's interpretation of the LTD Plan is untenable. Stewart does not dispute that what he actually received was a "cash separation payment," nor can he, as his separation agreement and release describes the $63,840 payment accordingly. Def. Exh. 14 at 5; PR ¶ 9. Section 2.3.6 of the Bell Atlantic Separation Pay Plan (the "Separation Plan") describes the term "cash separation payment" as a "single-sum separation payment" paid to an employee "following [his] separation from service as a result of a reduction in force." Def. Exh. 10 at 9. Noticeably absent from this language, however, is any mention of the term "continuation pay." Courts must interpret documents as a whole, and the inclusion of certain provisions often implies the exclusion of others. *See Wilson v. Career Educ. Corp.*, 729 F.3d 665, 678 (7th Cir. 2013). Here, the Separation Plan expressly designates a "cash separation payment" as a "single-sum separation payment," and the Court will not expand its description to include "continuation pay."

Moreover, while the term "continuation pay" is not defined in either the LTD Plan or the Separation Plan, the *Merriam-Webster Dictionary* defines "continuation"

as "the act of continuing or of causing something to continue." The Court finds nothing about the nature of a one-time cash payment that would permit it to be called "continuation pay." Thus, Stewart is incorrect in asserting that he received "continuation pay" in connection with his separation from Verizon, and Section 3.2.4 of the LTD Plan does not apply to Stewart.

Even if Section 3.2.4 of the LTD Plan did apply to Stewart, though, it would not operate in the way that he contends. This plain language of the LTD Plan provides that a claimant who receives "continuation pay under a severance plan" retains *eligiblity* for LTD Plan benefits, not an absolute *right* to receive them. In other words, the claimant must still satisfy the other requirements of the LTD Plan in order to recover benefits.

The undisputed facts, supported by the evidence in the record, conclusively establish that Stewart was not eligible for benefits under the STD Plan, and for that reason he could not satisfy the Waiting Period under the LTD Plan. As stated earlier, the STD Plan clearly and unambiguously provides that in order to be eligible for short term disability benefits, a claimant must submit timely evidence of his disability. The determination of the VCRU and the VCRC that Stewart failed to submit timely evidence of his disability was not arbitrary and capricious, and therefore he was not eligible to receive benefits under either the LTD Plan or the STD Plan.

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted, and Stewart's motion for summary judgment is denied.

ENTERED:

_____

Thomas M. Durkin
United States District Judge

Dated: December 19, 2013